Pantaleon Flores, Jr. for the Appellant, Mark E. Brown. I will start off with the lower court's assessment of the pretext issue on the Title VII case where the court held that the plaintiff failed to establish that the stated reason by the was not a pretext for unlawful discrimination. Why don't we start with, are you conceding now that you should have filed under 1983 and 1981, or are you still suggesting that you don't have to? I'm still suggesting that we do not have to, Your Honor. All right. Because in Jett, when we look at Jett, and if we start with Jett, what the Supreme Court did in Jett really said that the 1981 claim had to be looked at under whether or not the defendant in that case was attempting to hold the school district liable under a theory of vicarious liability, respondeat superior, or under a policy-based decision as found in Monell and was followed by Monell. And in this case, Judge Robinson specifically in footnote noted that this is not a vicarious liability case and that the board action that we were challenging was official policy of the district, and therefore, we would have qualified even under the Jett decision to proceed under 1981, particularly in light of the amendments that came thereafter. Well, you're familiar with our Hannah v. Cole short case? Yes, I am. In 2016? Yes, I am. Okay. And I understand the analysis there, and I read that opinion as well as the Bolden opinion and the Salme opinion against the— When was it first brought to your attention— I'm sorry? You should have amended your pleadings earlier to include or taken steps to comply with 1983. Formally, in this case, when the motion for summary judgment was filed. Now, was the first time you had any idea that this was the issue? No, that's not the first time I had an idea that this was an issue. When I read the amendments to Section 1981 and the provisions that deny the plaintiff in 1981 action, as amended, the right to pursue punitive damages against a governmental actor, to me, that changed the whole game with regard to subsection C of the rights that were protected, which states that the amendments apply to both governmental and non-governmental actions. And so it seems to me that a fair reading of that amendment, which created remedies, which the only reason we had to rely on 1983 in the context of a suit against the state or an and this Congress enacted remedies under Section 1981, then we should be able to pursue a claim for a contract deprivation or a failure to allow an individual to contract on an equal basis with whites under Section 1981, even if it's with the school district. I understand that I am swimming upstream with regard to my argument. I understand that there are cases throughout the nation that have held otherwise, but I think they've all misconstrued yet. One is something where you're not swimming upstream quite so much. You started out by saying something about pretext, which I think is probably your strongest argument. Yes, Your Honor. Going back to the pretext issue under Title VII, the lower court found that there was a, well, insufficiency of evidence, if you will, to show that the statement by the principal, Conklin, was false about there not being any jobs available in the spring of 2016 for Mr. Brown to apply for or to be hired into. That statement was false. Well, as of when was it false? It was a false, I think, later on, wasn't it? It was false before it was made. Based upon the emails that were sent out by the human resources manager to the staff of the district prior to that, on April 13th, jobs were identified as being available in the school that she was the principal over. My client didn't get those emails because he was a substitute temporary teacher. Everyone else got them, and so Conklin, the principal, knew of those jobs and had also been advised by the teacher who replaced Brown in January of 16 that she was not returning, and that happened in March. And so there was evidence that she knew that there were positions available. Was there evidence that the positions in the April 13 email were still available on April 28? There wasn't any evidence in the record either way on that issue. What we do know is that they were available at that time. We don't know whether they were still available as of the 28th night she met with us. They had been advertised only two weeks earlier, hadn't they? That's right, only two weeks earlier. So if they weren't available, it's because they were all hired within two weeks of the announcement of the advertisement? Which I would find a little bit incredible, exactly. Does the principal know about these openings because she's the principal? And a recipient of the emails. She got the email. Yes, the executive director and the human resource officer both testified that they were sent to all regular employees, and she's the principal of the school. Sources send an advertisement for a position without authority from the principal? Who would they get authority from? Well, I don't know that it's in the record where that authority came from, but it was common knowledge, at least, that these two positions were going to be available, and so they immediately put out notice so that other teachers who might also, and it says it at the very bottom of the email, which is very hard to read, I know, because it's very small, that if you want to transfer to one of these positions, let the human resources officer know. So everyone's put on notice that if you're going to move and you want one of these jobs, do it now. And then the other thing that the lower court did was to look at the evidence of pretext in a vacuum. It only looked at whether or not the falsity of these statements was sufficient to show race discrimination against Mr. Brown. It failed to consider the totality of the circumstances. Specifically, his termination in December of 2015 when the two black students that were enrolled in the school left the school. There's some dispute in the record, but the evidence for Mr. Brown is that when he was hired, he was told by the principal that he was the first black teacher in 17 years to work at that school. And they were looking for some diversity because they had African-American students. And when the two African-American students leave, lo and behold, they no longer need Mr. Brown, which I think sheds some light on the racial aspect of this case. Didn't he subsequently get other part-time employment with them? He did, in another contract that was less favorable, even though he had a contract for the entire school year to work as a substitute teacher. And he was replaced by someone who wasn't as qualified as him, a white female with a teaching certificate to teach English to elementary ed. Mr. Brown had a teaching certificate to teach special education to K through 12, which qualified him also to teach English, which is the classroom that he was in before he was replaced. It's uncontroverted that the teacher who replaced him was working on a waiver so that she could work in the job. Well, she was a substitute teacher also, wasn't she? Well, she was hired as a permanent teacher. At least that's what they told Mr. Brown. And so because of those facts also— Well, is a special ed teacher automatically competent to do English full-time? To special ed students, and this was a special ed school. Okay, thank you. Could I just ask you about the job postings on the website as opposed to the job availability announcement in the email? As far as the website postings are concerned, I think these positions were listed on April 22 and April 29. Were any of those positions located at the John Dewey Learning Academy? It's a little unclear from the record whether or not those were some of the same positions that were included in the email, but they were certainly positions for which Mr. Brown would have been qualified to teach and for which the principal should have been aware were also available for consideration when she told Mr. Brown they had no vacant positions. All right, now you just mentioned a minute ago that the January contract was worse than the terms of the October contract. Is that correct? It was less favorable, yes. But in the pretrial order, you state your retaliation claim was based on denied employment opportunities with Keystone. Right, well, he was denied several employment opportunities. One, he was denied the right to seek a full-time position for the 2016-17 school year. He was denied the opportunity to continue. Was that raised below? It was, and that's where the defendant in this case asserts that he never applied for discriminated against because he didn't apply for the positions when he was lied to about their existence. He also accepted a part-time position with the district in what's called the harvester's program, which was the program that he showed up to in June to work and then was directed to not allow to start working by the executive director's actions in this case. So he was denied multiple opportunities for employment in spite of his qualification and abilities. Okay, so you made the claim and it was beyond merely unfavorable terms in the contracts. That's correct. But it didn't obviously include those also because under the second contract that the board approved, he was determined to be an at-will employee and could be terminated other than for funding reasons as all the other substitute teachers were hired and as he was originally hired in the October 26th contract that he had. So it is our position that the lower court, when it looked too narrowly at the pretext evidence committed error in determining that we had failed to meet our burden of proof to show inconsistencies within the position of the defendant sufficient to establish a pretext and be allowed to go to trial. And because of that, we submit that this court should reverse that decision on the issue of pretext on the Title VII claims and remand the case for trial on the merits on whether or not Mr. Brown was discriminated against in his effort to become a teacher with the district. And if there aren't any other questions at this point, I'd like to reserve the balance of my time. Mr. Goheen. May it please the court. I think it would be helpful for me to start out with just a factual recitation of exactly how Mr. Brown came to be hired at the school district. And all this is in the brief. But Mr. Brown was initially hired at the school district to be a substitute teacher. He was hired under a contract that had an indefinite term or period to it. That contract was to be a substitute teacher and that fit within the licensure that he had. There was no ending date to it. So under Kansas law, he was employment at will right out of the gate. It was what? I'm sorry. Under Kansas law, because there was no definite term to the contract, it doesn't matter whether there's a written document or not, he's still an employee at will. So this notion that somehow he got a less favorable contract when he had a contract for a specific term for the second semester, that's not a less favorable contract. There was nothing about that that made it less favorable. The reason those additional terms were included in the contract is because there was confusion by Mr. Brown. He retained counsel. His attorney approached the school district about that contract and this argument that he should have been allowed to continue into the second semester even though the school district had found a full-time teacher to replace the teacher who was gone that he was serving as a substitute teacher for. So nothing racial, there's not even an allegation anywhere in this lawsuit that there's anything racial to do with that initial determination that he was a substitute teacher, he was told there was no longer a need for his assignment to continue once they found a permanent teacher for that position. And when his attorney approached the school district, they found another assignment for him, reached an agreement, and entered into a very specific contract so there was no confusion that his employment was going to end at the end of that 2000, I think it was 14-15 school year, I may have the wrong year. So that's how that concluded out. There's no claim made to the EEOC, there's nothing in the charge of discrimination, nothing about that first assignment back in the fall semester of 2013-14. So the issue then becomes the claims that are actually in front of the court, that are presented to the court, are arguments that Mr. Brown was not hired into a teaching position or not offered a teaching position for the next school year. And the problem with those claims, regardless of which legal theory they're presented under, is it's all based upon this notion that somehow there's pretext for the legitimate non-discriminatory reason that the district has for hiring other individuals for those positions. And that reason is laid out in the pleadings, and there's no dispute about it, is the district hired people who had actually applied for those positions. Can I ask for clarification on that? Sure. The parties agree, if I understand it, that their first step of McDonnell-Douglas analysis has been met. That is, there is a prima facie case established for purposes of considering this appeal. I think that's correct in the sense that he certainly was in a protected class, and he certainly was in terms of his race claim. I don't think that's true in connection with his retaliation claim, because our position is, and I don't think there's any- Well, as to the failure to hire, the Title VII failure to hire claim, we're at the pretext point, correct? I believe that's correct, Your Honor. All right. If the prima facie case element has been satisfied, doesn't that mean that he did apply for one of these jobs? How can you satisfy the prima facie- I guess if you put it that way, I'm not sure the prima facie case has been satisfied. You've changed my mind in terms of how that would be articulated. I was looking at it more in terms of whether he was qualified for the position in terms of his educational background, but he didn't apply. The second step of McDonnell Douglas is the employer's statement of reason for why he wasn't hired, and wasn't that because, wasn't the stated reason that they don't hire people who don't apply and who are not qualified? That's correct. And in this case, there's no dispute that he did not apply for those positions. His argument is he didn't apply because he wasn't made aware of those positions. I thought his argument was that having his letter and application on file and the fact that he was told that it would be on file is sufficient for him to meet the application part of- That's correct. When he had initially applied for a position with the school district, he submitted two applications. One was for the substitute teaching position, which he was hired for. The other was for a different position that had actually already been filled before his application was received by the school district for a full-time position. The district does, and the testimony indicates that when they receive an application for a vacant position, they keep those applications on file in case there's another vacant position and will consider those for future employments for a period of time. The testimony was also by the same individual, it was a secretary or an HR person who made this testimony, indicated that when somebody was hired for a position, she removed those applications for future consideration and that those individuals were then treated under the transfer policy. So if you're already working for the school district, they weren't going to consider a pending application you had for another position unless you reapplied for that open position through the transfer procedure. I believe that's the testimony that's in the record, and I think there's no dispute about what that testimony is. The crux of the pretext argument, as I understand it, is that he spoke to the principal and asked, are there any openings? That's what I understand, too. There's no dispute that the principal said there aren't any, is that correct? I think that is also correct at the time that she made that statement. The question becomes, was that untrue to the principal's knowledge? And the question is whether there's sufficient evidence of that, and that's what counsel went through in his argument. Yeah. Persuasive to me. Was there any evidence offered that the statement was false at the time it was made? There is no evidence that the statement was false at the time it was made. We're actually mixing a couple of different things, and let me try to unpackage those a little bit for you. One is the issue of the email and the email that went out to employees about vacant positions that they could transfer for. That went out to all employees. That's the evidence that's in the record. Plaintiff actually had an email account with the school district. He just never set up on the computer to receive those emails, whether that was because he was a substitute teacher or not. The record's not clear on that. But it certainly was not because of his race. And that's ultimately what you have to get to. Well, no. Maybe he screwed up and didn't get an email account. That's not an excuse for telling him a falsehood. I agree. So how long before the principal told him there are no vacancies did that email go out? I don't recall off the top of my head, but the date that the email went out is in the record, Your Honor. It's fairly soon. April 13. That could be. Before the conversation. 15. 15 days. And it's also. There were the emails. There was also an advertisement. That's correct. And the testimony is that the school district maintained advertisements for open positions, even when positions have been filled. So they would continue to receive applications. So you can't necessarily tie the fact that they have an advertisement out for teaching positions as evidence that there were actually ones open at that time. Is that also true of the email? No, the email was for specific positions, as I recall. So those were like 15 days before the principal said there were. There is no evidence in the record that the principal is aware that there were any open positions at the time she allegedly made this statement to Plano. The fact that the email went out to everybody saying they were open 15 days earlier doesn't. Is it good evidence that the principal would have known that? There's no evidence that those positions were vacant at the time the principal had this conversation with him. Which was 15 days later. You don't think that's a reasonable inference that. Well. Positions in the school would not. I think the reasonable inference is that the principal would know whether there were vacant positions at her building or not. And her testimony was at the time she met with the plaintiff and made it. And there's some dispute about what exactly was said or not said to the plaintiff. But the unit most favorable to the plaintiff, as we must do in this type of situation, there's simply no indication that she believed or understood that she had any vacant positions for which it was qualified at that time. I thought it was for the next year for the following. It is. It's for the next 15 days out. Right. It would be for positions for the next school year that they were trying to fill. And if those positions have been filled by the time she had the conversation, or if they were positions that were available at other locations, that would not be something that she would have been involved with. So you said there was some dispute about what the principal said. Reading the record in the light most favorable to the plaintiff. What did he say? I think if you read in the light most favorable to the plaintiff, the testimony would be that she did not have a position at the school or no open positions at the time at the school. Just at the school. I believe that's correct. Okay. Could I just ask you about, this is more the application of the law of pretext to the situation. Um, let's say that a reasonable jury could infer that not only were the April 13 listed positions open, but could also reasonably infer that the principal was aware of that. And so if she told him, Mr. Brown, that there were no positions, whether it was a misstatement or an intentional falsehood, can you still win on this appeal on the pretext issue, assuming all that? I believe so for a couple reasons. I don't think there's any reason to think, I mean, there's a lot of ways to interpret it. She could have made a mistake. She could have been telling the truth. She could have been wrong. She could have been lying, whether intentionally or for lack of knowledge on her behalf. That doesn't mean that she had a discriminatory motive or discriminatory intent. And that's part of what you have to establish here. The notion that he wasn't hired for a position, the proof still has to be that he was not hired for that position because of his race. Or if you view the retaliation claim as being valid. Let me get back to just the law of pretext for McDonough and Douglas. If the stated reason by your client that he wasn't hired is that he didn't apply or he wasn't qualified, and we get to this pretext issue about what went on in that conversation with the principal, and it turns out that what she said was not accurate. To the extent that that undermines the stated reason for why he wasn't hired, why isn't that enough to get him past summary judgment? The stated reason is that he didn't apply for the position. And he was not otherwise qualified for any positions that were open at the time. So those are the stated reasons. The stated reason is not, the principal's statement could be true or untrue, but it doesn't change the district's reason or rationale for not hiring or not considering him. Was he not qualified for any of these positions? I don't recall the specific positions that were open at whatever point in time, but a of that nature. So the point being, there had to be a position that was open that he applied for that was a position for which he was qualified by his educational experience. There were at least three positions listed that I'm interested in. There's a functional skills teacher, English teacher, and special education. Now, was he qualified for those positions? He did not have a certification for English, is my recollection. He did have a certification for special education. I don't remember if it had limitations on it as to what specific areas or not, as I stand here today. But that would, again, be reflected in the record. But to circle back, he still had to apply for those positions. And it's not enough to say, here you have an individual whose employment was a fixed term employment. It ended on a date certain under his employment contract. So there's no obligation to hire him or offer him an employment for the next year unless he applies for that position. And so, you know, almost the conversation with the principal in a sense almost becomes a red herring because. Well, if he doesn't apply because he's told there are no vacancies. That's fair. But if he later learns or understands that there are because he looks on the website and sees there's these open positions, which he apparently did because he says that he saw these on the website. He never applied. Never applied for those positions. So causation issue. I think it would be a causation issue. It might go to the prima facie case. There's a lot of ways you could look at what that looks like. But does the employer, does the school district have an obligation to offer a position or to interview somebody for a position when they didn't apply for the position? I think that's really what we're looking at, because remember, this is a race discrimination claim. Let me ask one further question. Is there any evidence in the record as to whether there were any vacancies available at the time at that school? I don't know that there's any record or evidence in the record as to whether there were any specific vacancies at the school at that time. I don't think there is any evidence one way or the other. Thank you. Thank you. If I may first address that question about vacant positions at the school at that time. In the record before the court, at page 197 of the appendix, there is a subsequent email dated May 8th, which references the same John Dewey Learning Academy English teacher position still being available on May 8th, which was clearly after the principal told Mr. Brown there were no vacant positions. And in addition, the two positions that were available in the April 13th email, which is page 195 of the record, were for a functional skills teacher and an English teacher. The English teacher position was the one that Mr. Brown filled in the fall, and the functional skills position was the one that he filled in the spring. So those were at that school? At that school. Well, he would not have been qualified to be a full-time English teacher. He was a substitute teacher. Isn't that correct? Well, if it were in a regular high school, that would be true. Everybody in this school was a special ed student. Yes, this academy was for students with special educational needs. He was qualified, or was he not, to teach English full-time, not just as a substitute teacher at a special ed school. Is that correct? That's what the record reflects, and that was what his testimony is, is that because he is certified by the state of Kansas to teach K-12, he can teach any subject in a special ed setting. Independent of that, would he be able to go to a regular, if you will, high school and teach English and be qualified? Not in the sense of having an English certification, no. That's not an endorsement that he carried. Thank you. Your time is expired.